**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*86 Chambers Street*
*New York, New York 10007*

April 20, 2026

**By ECF**
The Honorable Jennifer L. Rochon
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

Re: *Fuenmayor Ochoa v. Mullin et al.,* No. 26 Civ. 3136 (JLR)

Dear Judge Rochon:

This Office represents the government in the above-referenced immigration habeas corpus action brought by Petitioner, Eduardo Jose Fuenmayor Ochoa. On April 17, 2026, the Court issued an order directing the government to provide certain information by today. ECF No. 8. I write respectfully to provide that response.

**a. whether Petitioner was . . . located in the Southern District of New York at the time that the Petition was filed . . . . ;**

The Petitioner was located within the Southern District of New York at the time the petition was filed, and therefore venue is not in dispute.

**b. Petitioner's A-number, current place of detention, and a contact person who can facilitate counsel's access to Petitioner;**

Petitioner's A-number is 246-976-028. He is currently detained at the Orange County Jail in Goshen, New York. Contact can be made by calling (845) 291-7758 or (845) 291-7760 between the hours of 8 a.m. and 4 p.m. Additional information can be found at https://www.ice.gov/detain/detention-facilities/orange-county-jail.

**c. the statutory provision(s) under which Respondents assert the authority to detain Petitioner;**

Respondents assert that Petitioner's detention is governed by 8 U.S.C. § 1225(b)(2)(A).

**i. If the asserted basis for Petitioner's detention is 8 U.S.C. § 1225(b)(2)(A), whether there is any basis to distinguish this case from *Guzman Andujar v. Francis*, No. 25-cv-09199 (JLR), 2025 WL 3215597 (S.D.N.Y. Nov. 18, 2025). If not, whether Respondents would consent to issuance of the writ — subject to preservation of Respondents' arguments for appeal.**

In short, on the primary legal issue presented in this case—whether the statutory authority

for Petitioner's detention is 8 U.S.C. § 1226 or 8 U.S.C. § 1225(b)(2)(A)—this case is not materially distinguishable from this Court's prior decision in *Guzman Andujar v. Francis.* While the government respectfully disagrees with the Court's decision in *Guzman Andujar*, the government acknowledges that such decision would control that legal issue if the Court adheres to its prior decision. Thus, while the government does not consent to issuance of the writ, while reserving all rights, including the right to appeal, and to conserve judicial resources while expediting the Court's consideration of this case, the government is content to rely upon, and incorporate by reference, the legal arguments it presented in *Guzman Andujar*, and the Court can decide this matter without further briefing. However, should the Court prefer to receive a formal opposition brief in this matter, we will file such a brief upon the Court's request.

Regarding relief, however, this case is materially different from *Guzman Andujar*, because Petitioner received an individualized assessment of dangerousness. In *Guzman Andujar*, the Petitioner unlawfully entered the United States without inspection in January of 2023, was encountered and arrested shortly after entering, issued a Notice to Appear, then released on his own recognizance. *Guzman Andujar v. Francis*, No. 25-cv-09199 (JLR), 2025 WL 3215597 at *1 (S.D.N.Y. Nov. 18, 2025). Then in November of 2025, he was arrested by ICE at the conclusion of his immigration court hearing, and the petitioner challenged his 8 U.S.C. § 1225(b)(2)(A) detention before this Court. *Id.* at *2. This Court found that the petitioner was held pursuant to 8 U.S.C. § 1226(a), and that "there is no record evidence that any kind of individualized determination" because "nothing in the record reflects . . . (1) who made the decision to detain him, (2) when that decision occurred, (3) on what basis the decision to detain him was made, (4) whether there was any material change in circumstances with respect to [Guzman Andujar] that triggered his detention, or (5) whether there was any sort of new policy in place that triggered his detention" but that instead "the record shows that DHS officials quite literally skipped Guzman Andujar's individualized assessment." *Id.* at *7.

Unlike in *Guzman Andujar*, Petitioner received an individualized determination whereby ICE concluded that detention was the least restrictive setting to mitigate flight risk and danger to community. Specifically, on April 3, 2026, a day prior to Petitioner's eighteenth birthday, ICE conducted an age-out custody review, memorialized on ICE Form 70-070, attached hereto. In that form, Deportation Officer Juan Pizarro-Gutierrez found that Petitioner "has exhibited aggressive behaviors that indicate he may require continued structure and support to ensure a safe and successful transition to the community upon release from ORR." *See* Age-Out Worksheet at 1. The basis for that finding was because Petitioner "was arrested [for] evading arrest detention on 5/30/24 and sentenced to 6 months probation" and concluded that Petitioner "is considered a Flight Risk." *Id.* at 2. The Deportation Officer also noted that Petitioner "has an order of protection against his mother due to abuse." *Id.* at 3. Though Petitioner's health concerns were weighed, Unit Chief Byoung C. Park overruled release on GPS monitoring, and recommended detention, because Petitioner was "arrested 5 times since 2024 for evading arrest, stolen vehicle, larceny, theft, and criminal trespass. Since age-out entered the US in 2023, he has been consistently breaking US laws. Also, his arrest was while he was in probation. Conviction is not a requirement to detain. Also, age-out has multiple evading arrest incidents. It shows his disregard to law enforcement officers and presents flight risk. Detention is the least restrictive tool that mitigates the flight risk and the danger to community age-out is posing." *Id.* at 4. ICE decision to detain Petitioner was therefore an individualized one. It was made by ICE Officer Park, a day before Petitioner's eighteenth birthday on April 3, 2026, on the basis of Petitioner's criminal record that

Petitioner accumulated after his unlawful entry in 2023. Thus, to the extent that the Court finds that Petitioner's detention can only be under § 1226(a), the government respectfully submits that the appropriate remedy is to order that a bond hearing be held, not immediate release, as ICE engaged in an individualized assessment before detaining Petitioner. *See, e.g.*, *Guedez v. Catletti*, No. 26 Civ. 2463 (JLR), 2026 WL 962575, at *2-3 (S.D.N.Y. Apr. 9, 2026) (ordering bond hearing before immigration judge, rather than outright release, where ICE made an "individualized assessment" before detaining petitioner); *Guachambala v. Lyons*, No. Civ. 1835 (GBD), 2026 WL 686154, at *2 (S.D.N.Y. Mar. 10, 2026) (ordering bond hearing where the government specifically targeted petitioner, who had an "outstanding criminal charge for drunk driving"); *Gunduzalp v. Joyce*, No. 26 Civ. 2330 (GBD), 2026 WL 948736 (S.D.N.Y. Apr. 8, 2026) ("Where the record reflects that the Government exercised some discretion in detaining Petitioner, as here, the appropriate remedy is a prompt bond hearing."); *Sharifzoda v. Orange County Jail*, No. 26 Civ. 2486 (KMK), 2026 WL 851378 (S.D.N.Y. Mar. 27, 2026) (same); *Yuehua Li v. Noem*, No. 26 Civ. 989 (JAV), 2026 WL 366849 (S.D.N.Y. Feb. 10, 2026) (ordering bond hearing before an immigration judge, rather than outright release, where ICE targeted alien for arrest because of criminal history); *Jimenez Garcia v. Joyce*, No. 26 Civ. 429 (AS), 2026 WL 251889 (S.D.N.Y. Jan. 30. 2026) (same)

Petitioner claims a Due Process violation because "Respondents neither gave Eduardo a warning that he would be detained in ICE custody upon his 18th birthday nor the opportunity to contest that detention." Pet. ¶ 81. Petitioner further claims a violation of the Trafficking Victims Protection Reauthorization ("TVPRA") because "[u]pon information and belief, Respondents failed to properly document or consider the least restrictive alternative for Eduardo as required by the 2022 Garcia Ramirez Settlement Agreement and the permanent injunction issued in that litigation." Petitioner also alleges an APA violation because ICE's decision to detain Petitioner "flies in the face of the statutory regime's contemplation that minors remain in the least restrictive setting." Petitioner's arguments are misguided and lack a factual basis, as ICE did not fail to properly document or consider the least restrictive alternative for Petitioner as described above and as documented by that attached Age-Out Worksheet, ICE Form 70-070. ICE weighed discretionary factors in Petitioner's case to conclude that detention was the least restrictive tool to mitigate flight risk and danger to community, and detention is within the range of permissible decisions. To the extent Petitioner quarrels with ICE's discretionary decision to detain Petitioner, it is nonreviewable, as discussed below.

The Immigration and Nationality Act's ("INA") jurisdictional bar in 8 U.S.C. § 1252(a)(2)(B) precludes judicial review of ICE's discretionary placement decision. That section provides that "[n]otwithstanding any other provision of law . . . and regardless of whether the judgment, decision, or action is made in removal proceedings, no court shall have jurisdiction to review" any judgment regarding the granting of discretionary immigration relief or "any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security." 8 U.SC. § 1252(a)(2)(B)(ii). The courts thus "lack jurisdiction to review purely discretionary decisions" by immigration authorities. *Noble v. Keisler*, 505 F.3d 73, 77 (2d Cir. 2007).

"The statute at issue confers discretion on the Secretary to decide the placement of an age out, requiring only that the Secretary 'consider placement in the least restrictive setting available after taking into account the alien's danger to self, danger to the community, and risk of flight.'"

*Rodas Godinez v. ICE*, No. 2:20-CV-466 KWR/SMV, 2020 WL 3402059, at *4 (D.N.M. June 19, 2020) (quoting 8 U.S.C. § 1232(c)(2)(B)); *see also, e.g.*, *Mendez Ramirez v. Decker*, No. 19-cv-11012 (GHW), 2020 WL 1674011, at *9 (S.D.N.Y. Apr. 3, 2020) (reading TVPRA as providing that "DHS can exercise its discretionary authority to place former UACs subject to Section 1232(c)(2)(B) into the "alternative to detention programs" referred to in that section). Thus, while this Court has jurisdiction to determine whether ICE in fact considered Petitioner for placement in the least restrictive setting available, the substance of ICE's determination—which is discretionary—is not subject to judicial review under § 1252(a)(2)(B)(ii).

Even if the Court has jurisdiction to review ICE's discretionary determination, ICE properly exercised its discretion in weighing Petitioner's criminal history, and permissibly concluded that he presents a significant danger to the community that requires detention—notwithstanding Petitioner's rationalization of his "behavioral incidents during his time in ORR custody […]." Pet. ¶ 84. Here, the statute is drawn in broad terms because it directs ICE to "consider placement" and "tak[e] into account" Petitioner's "danger to the community, and risk of flight." 8 U.S.C. 1232(c)(2)(B). The statute does not list specific factors that must be considered when assessing risk of flight, and therefore those factors are left to ICE's discretion. ICE reasonably took into account Petitioner's five arrests, including while on probation, evading arrest, and reasonably concluded that Petitioner could not be trusted to appear for her immigration proceedings, and was therefore a flight risk and danger to the community.

**d. a copy of any final order of removal;**

Petitioner does not have a final removal order.

**e. any information regarding the procedural posture of any pending Department of Homeland Security or Executive Office for Immigration Review proceedings.**

On September 3, 2025, Petitioner appeared at his first master calendar hearing before Immigration Court, at which he requested, and was granted, a continuance. On October 22, 2025, Petitioner appeared at another master calendar hearing before Immigration Court, with counsel, and another continuance was granted. On December 17, 2025, Petitioner appeared at another master calendar hearing before Immigration Court, and another continuance was granted. On January 28, 2026, Petitioner appeared at another master calendar hearing before Immigration Court with another attorney, and another continuance was granted for Petitioner to be reunified with a family member. On March 4, 2026, Petitioner appeared at another master calendar hearing before Immigration Court with a child advocate, and another continuance was granted for Petitioner to be reunified with a family member. On April 15, 2026, Petitioner appeared at another master calendar hearing before Immigration Court with another attorney, and another continuance was granted for attorney preparation. Petitioner is scheduled to appear before Immigration Court on April 27, 2026 for another master calendar hearing. The government does not have any record of Petitioner having filed for any benefits with the Department of Homeland Security.

* * *

Given the foregoing, the government is content with resting on this submission and does not intend to submit a further response to the petition unless the Court requests that the government file a formal brief or other supplemental submission, which the government will promptly do if

ordered to do so. And for the reasons discussed above, the Court should deny the Petition or, if it grants the petition, order a bond hearing before an immigration judge.

I thank the Court for its consideration of this submission.

Respectfully submitted,

JAY CLAYTON
United States Attorney for the
Southern District of New York

By: s/ *Tudor M. Neagu*

TUDOR M. NEAGU
Special Assistant United States Attorney
86 Chambers Street, 3rd Floor
New York, New York 10007
Telephone: (646) 906-5441
E-mail: tudor.neagu@usdoj.gov
*Attorney for Respondents*

cc: Counsel of Record (by ECF)