THE DOOR
Where Young People Thrive

*By ECF*                                                                          April 24, 2026

The Honorable Jennifer L. Rochon
United States District Judge, Southern District of New York
500 Pearl Street,
New York, New York 10007

Re: *Fuenmayor Ochoa v. Mullins, et al.*, (26 Civ. 3136 (JLR)

Dear Judge Rochon:

Petitioner Eduardo Jose Fuenmayor Ochoa ("Eduardo") respectfully submits this letter responding to Respondent's April 20, 2026 letter.[1] For the following reasons, this Court should grant Eduardo a writ of habeas corpus and order his immediate release.

## I.       Immediate Release is The Proper Remedy For Constitutional and Procedural Violations

Respondents assert that Eduardo's detention is governed by 8 U.S.C. § 1225(b)(2)(A), yet concede that Eduardo's case is materially indistinguishable from *Guzman Andujar v. Francis,* ECF No. 11, where the Court held that 8 U.S.C. § 1225(b)(2)(A) did not apply to a petitioner, like Eduardo, who had been living in the United States for years and was detained. No. 25-cv-09199, 2025 WL 3215597 (S.D.N.Y. Nov. 18, 2025). Thus, Respondents continue to detain Eduardo unlawfully under 8 U.S.C. § 1225, and any post-hoc justification by Respondents is impermissible. Immediate release is the only appropriate remedy, given Eduardo's claims, the extraordinary circumstances presented by his age, medical condition, history of abuse by government employees, status as a victim of trafficking, and potential irreparable harm. A bond hearing is not an appropriate remedy for Eduardo's constitutional claims. Moreover, Eduardo's case is distinct from *Guedez v. Catletti* 2026 WL 962575 (S.D.N.Y. Apr. 9, 2026).

## 1.    <u>Respondents violated Eduardo's due process rights by failing to provide him notice and an opportunity to challenge his flight risk and dangerousness determination</u>

Eduardo had no opportunity to challenge his detention based on the Age-Out Review Worksheet ("AORW") prior to ICE detaining him on his 18th birthday. Respondents did not provide Eduardo or his attorney with notice to be heard as to their determination that he presented a danger and was a flight risk. These processes did not comply with either the *Flores Settlement Agreement* or the Due Process Clause. *See, e.g., Funes Gamez v. Francis*, 810 F. Supp. 3d 472, 498 (S.D.N.Y. 2025)("[T]he Due Process clause gives noncitizen[s] procedural rights in connection with the decision to deprive them of liberty.") (collecting cases). Thus, Eduardo had no pre-deprivation procedure to challenge his detention based on ICE's danger and flight risk determination, a decision that overruled the decisions made by ORR and ICE officials who worked closely with Eduardo for months and approved release.

---

[1] Respondents argue that Petitioner's detention is not subject to judicial review. However, Courts have consistently rejected Respondents' reading of the statute as overly broad, holding "[i]f a statute does not explicitly specify a particular authority as discretionary, section 1252(a)(2)(B)(ii) does not bar judicial review." *See, e.g., Aguilar v. U.S. Immigr. & Customs Enf't,* 510 F.3d 1, 20 (1st Cir. 2007). Regardless, settled authority establishes that whether a habeas petitioner has "received the due process to which [s]he is entitled is not a matter of discretion and is subject to judicial review." *Velasco Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020).

**2.** **ORR violated Eduardo's due process rights by delaying and subsequently failing to release him to a qualified sponsor**

ORR's failure to promptly release Eduardo to his proposed sponsor violates due process. The Foundational Rule requires ORR to "release a child from its custody without unnecessary delay" after determining that a proposed sponsor is suitable and that detention is not "required" to secure appearance "before DHS or the immigration court, or to ensure the child's safety or that of others." 45 C.F.R. § 410.1201. The Rule further requires ORR to adjudicate the sponsor application of certain family members, including siblings, "within 10 calendar days of receipt of the[] application, absent an unexpected delay (such as a case that requires completion of a home study)." *Id*. § 410.1205(b). "Several courts have agreed that 'significant' and 'unexplained delay[s] in responding to [a proposed sponsor's] reunification request' violate due process." *M.A. v. Molina*, No. 4:26-CV-415, 2026 WL 741623, at *6 (N.D. Ohio Mar. 17, 2026) (quoting *Lucas R. v. Becerra*, No. 18-CV-5741, 2022 WL 2177454, at *27 (C.D. Cal. Mar. 11, 2022).[2] Indeed, in its decision upholding the risk determination hearing as an "appropriate analogue" for FSA bond hearings, the *Flores* court emphasized the "ongoing duty" to "*promptly* place [UACs] in the least restrictive setting." *Flores*, 2024 WL 3467715, at *7 (emphasis in original), reflecting the Rule's due process guidelines.

Respondents failed to comply with these requirements. Eduardo's sister consistently and proactively participated in the sponsorship process; in contrast, ORR delayed multiple steps, including an almost three-month delay in the In-Person Vetting appointment. *See* ECF No. 3-3. Shortly before Eduardo's 18th birthday, on March 24, 2026, ORR indicated an intent to release him to his sister. *See* ECF No. 3-5. Despite Eduardo's eligibility for release and ORR's recommendation to release him, Respondents transferred him to ICE custody. To allow ORR to delay reunification indefinitely, and then to allow ICE to detain him at the conclusion of ORR detention, effectively allows ICE to evade the Due Process Clause, Flores guidelines, and the Foundational Rule.

Respondents acted arbitrarily, capriciously, and contrary to law by disregarding the controlling child-welfare framework governing custody and release of immigrant children.

**3.** **Eduardo's case is distinct from *Guadez v. Catletti* because he did not receive a proper individualized assessment and his case raises novel issues of fact**

Respondents point to the AORW, issued one day prior to Eduardo's detention, as an individualized assessment. However, the individualized assessment completed by the ICE Field Officer with knowledge of his situation recommended Eduardo's release to his sister, given his medical history and positive discretionary factors, including that he was "stepped down" at Children's Village for good behavior and consistently worked with clinical staff to improve his behavior and mental health. *See* Ex. B. Despite this assessment, the Unit Chief disregarded all individualized factors and ordered detention in a cursory paragraph rife with errors. The Unit Chief stated that Eduardo had been arrested five times as the primary reason for recommending detention, which conflicts with all information about arrests in the record. The Unit Chief also failed to consider the recommendations of Abbott House (ECF No. 3-5), and the Young Center (ECF No. 3-3; Ex. B), as well as Eduardo's medical history or his extreme vulnerability as a victim of trafficking and other severe forms of abuse. *See* AORW, ECF No. 11-1. Accordingly, the decision to detain Eduardo was not actually based on an individualized assessment.

---

[2] *See also J.E.C.M. v. Marcos*, 689 F. Supp. 3d 180, 197 (E.D. Va. 2023); *Maldonado v. Lloyd*, No. 18-CV-3089, 2018 WL 2089348, at *1 (S.D.N.Y. May 4, 2018); *Santos v. Smith*, 260 F. Supp. 3d 598, 613-14 (W.D. Va. 2017).

**4.  Eduardo's case is distinct from *Guadez v. Catletti* because Eduardo is entitled to TVPRA protections.**

Even if Eduardo did receive a proper individualzed assessment, release is still the appropriate remedy because unlike in *Guedez*, Eduardo is entitled to protections under the TVPRA.

Congress, through the HSA and the TVPRA, requires that unaccompanied children be maintained in the least restrictive setting appropriate to their needs and that the government undertake prompt and continuous efforts toward placement with qualified family sponsors. *See* 6 U.S.C. § 279(b)(1)(C)–(D); 8 U.S.C. § 1232(c)(2). The last-minute decision to detain Eduardo, after his Child Advocate, ORR, and the ICE Field Officer recommended release to his sister (ECF No. 3-3, 3-5; ECF No. 11-1), is arbitrary and capricious and contrary to the statute's requirement that minors remain in the least restrictive setting.[3]

Eduardo is a victim of a severe form of human trafficking. *See* ECF 3-2. He continues to suffer complications from gunshot wounds. Following abuse by staff at Children's Village, the very people entrusted to his care, Eduardo was diagnosed with Generalized Anxiety Disorder and Insomnia. ECF No. 3-3. Despite that, Eduardo is detained in dangerous and unsanitary conditions at the Orange County jail, an adult facility. Since his arrival, he has been isolated for 24/7 lockdown, with only 15 minutes a day to either take a shower or make a phone call. He has been denied his medications, medical treatment for his infected bullet wound, and even basic needs such as a toothbrush and a cup to drink water. Ex. A, Decl. of Jessica Cornejo-Mercado. These conditions have taken a severe toll on his mental health and are contrary to the recommendations of ORR, his Child Advocate, and the ICE Field Officer, who all recommended his release. Detention cannot constitute the least restrictive setting under the TVPRA.

For these reasons, Eduardo respectfully requests that the Court grant him a writ of habeas corpus and order his immediate release.[4]

Respectfully Submitted,
/s/ Jamie Kessler
Jamie Kessler
THE DOOR'S LEGAL SERVICES CENTER

---

[3] Judge Kaplan ordered immediate release of a youth detained by ICE on his 18th birthday after ICE overruled recommendations for release. He found the case indistinguishable from other cases where the government acted unlawfully. (*Martinez Martinez v. Mullins, et al.* No. 26-cv-2858 (S.D.N.Y. April 14, 2026).

[4] If the Court determines a bond hearing is appropriate remedy, Petitioner respectfully requests that this Court conduct the bond hearing in the first instance. "The Second Circuit recognizes that "[the Court's] inherent power to affect[ ] the custody of a detainee extends to admitting petitioners to bail in the immigration habeas context." *Elkimya v. Dep't of Homeland Sec.*, 484 F.3d 151, 153 (2d Cir. 2007) (citing *Mapp v. Reno*, 241 F.3d 221, 227 (2d Cir. 2001) (internal quotations omitted). Holding a hearing directly before this Court is the most efficient and appropriate method for ensuring due process. *See*, *e.g.*, *L.G.M. v. LaRocco*, 788 F. Supp. 3d 401, 405-06 (E.D.N.Y. 2025) ("The particular circumstances of this Petition . . . make this matter atypical and even more in need of constitutional scrutiny."). Further, the immigration judge can neither "decide constitutional issues," *Ozturk v. Hyde*, 136 F.4th 382, 400 (2d Cir. 2025) (cleaned up), nor review the decision to detain under § 1232(c)(2)(B). *See* 8 C.F.R. § 1003.19(a) (limiting immigration judge review to "[c]ustody and bond determinations made by [DHS] pursuant to 8 CFR part 1236"). Recent reports establish that bond hearings before immigration courts have become increasingly futile, with judges under "overt" pressure to deny bond, even in cases with substantial evidence supporting release. *See Gabriel Perez Velasquez v. Bondi et al,* No. 3:2026-cv-01759 (S.D. Cal. 2026). Courts have found that immigration judges' hearings were constitutionally lacking. *See L.G.M.*, 788 F. Supp. 3d at 405; *see also Briceno Solano v. Mason*, --- F. Supp. 3d ---, No. 2:26-cv-45, 2026 WL 311624, at *20 (S.D. W. Va. Feb. 6, 2026) ("[B]ond hearings are now being systematically denied [] based on rationales that would not have been deemed sufficient weeks earlier.")