# Exhibit A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

EDUARDO JOSE FUENMAYOR OCHA,

                *Petitioner-Plaintiff*,

                *v.*

MARKWAYNE MULLIN, in his official
capacity as Secretary of the U.S.
Department of Homeland Security,
TODD BLANCHE, in his official
capacity as Acting Attorney General of
the United States, TODD LYONS, in his
official capacity as Director of the U.S.
Immigration and Customs Enforcement,
WILLIAM JOYCE, in his official
capacity as Acting New York Field
Office Director for U.S. Immigration and
Customs Enforcement; ROBERT F.
KENNEDY, JR. in his official capacity
as Secretary of Health and Human
Services; ANGIE SALAZAR, in her
official capacity as Acting Director of the
Office of Refugee Resettlement; PAUL
ARTETA, in his official capacity as
Warden of Orange County Jail; U.S.
Department of Homeland Security; U.S.
Immigration and Customs Enforcement;
U.S. Department of Health and Human
Services; U.S. Office of Refugee Resettlement,

                *Respondents-Defendants*.

No. 26 Civ. 3136

**BRIEF OF *AMICI CURIAE* YOUTH DETENTION EXPERTS IN SUPPORT OF
PETITIONER-PLAINTIFF'S PETITION FOR A WRIT OF HABEAS CORPUS**

**TABLE OF CONTENTS**

PAGE NO.

INTERESTS OF *AMICI CURIAE* ................................................................................................1

SUMMARY OF ARGUMENT .....................................................................................................2

BACKGROUND ..........................................................................................................................3

DETENTION HARMS CHILDREN'S AND YOUTH'S MENTAL AND
PHYSICAL  HEALTH...................................................................................................................3

    A.Detention Causes Lasting Mental Health Harms to Children and Youth .............................4

    B. Adolescents Like Eduardo Are Highly Vulnerable to Harms from Detention
        Because They Are At a Critical Stage of Brain Development......................................7

    C. Solitary Confinement Is Dangerous for Youth and Increases Risks for
        Serious Mental Illness and Suicide .............................................................................8

    D.Prolonged Detention Is Particularly Harmful to Children and Youth.................................11

    E.Detention of Youth Triggers a Cycle of Increased Criminalization....................................12

    F.Detention Interferes With and Disrupts Children's and Youth's Education ........................13

CONCLUSION...........................................................................................................................13

**INTERESTS OF *AMICI CURIAE***

*Amici curiae* are organizations sharing the common goal of promoting the welfare and safety of children and youth who are impacted by immigration detention, including protecting them from the serious harm that detention poses to minors, and protecting their educational rights (the "Youth Detention Expert Amici").

Amicus Children's Defense Fund ("CDF") is a national organization working at the intersection of well-being and racial justice for children and youth. CDF partners with and amplifies the power of youth and families through advocacy, community organizing, direct service, and public policy. CDF's state offices in New York and Texas work with, serve, and advocate alongside children, youth, and families who are impacted by immigration policy or who have experience with the immigration, child welfare, and youth justice systems. They are recognized experts on policies impacting young people.

Amicus EdTrust-New York is dedicated to eliminating equity and opportunity gaps that prevent students from reaching their full potential. EdTrust-New York is committed to upholding the dignity, security, and humanity of immigrant students and families. The trauma caused by immigration enforcement actions reverberates through classrooms and communities, undermining students' ability to learn and thrive. EdTrust-New York joins this effort to affirm that Eduardo Jose Fuenmayor Ochoa and all children deserve the opportunity to learn, grow, and reach their full potential in safety and dignity.

Amicus Children's Rights is a national organization committed to improving the lives of children who are in or impacted by government child-serving systems. Through advocacy and legal action, Children's Rights investigates, exposes, and combats violations of the rights of children, and holds governments accountable for keeping kids safe, healthy, and supported. The organization is recognized for its deep expertise in addressing the unjust detention and

institutionalization of children, including those in child welfare, juvenile legal, and immigration systems. For 30 years, Children's Rights has achieved lasting, systemic change for hundreds of thousands of children across more than 20 jurisdictions throughout the United States.

Amicus Youth Represent ("YR") is a nonprofit legal services and advocacy organization that uses direct legal representation, policy advocacy, peer education, and other tools to build power and opportunity for Black, Latiné, and other youth of color who the criminal legal system and other institutional policing systems harm the most. YR provide legal services to young people up to age 26 in New York. YR also spearheaded the Record Review Center where the organization assists young people involved in the immigration system to correct errors on their RAP sheets, in order to avoid unnecessary collateral consequences.

Collectively, Youth Detention Expert Amici have many decades of experience advocating for children and youth who are placed in detention settings. They submit this brief to provide the Court with accurate information concerning the harms suffered by children and youth who are detained, such Petitioner Eduardo Jose Fuenmayor Ochoa is presently detained at the Orange County Jail.

## SUMMARY OF ARGUMENT

Youth Detention Expert Amici submit this brief in support of Petitioner Eduardo Jose Fuenmayor Ochoa's request to the Court for a writ of habeas corpus to release Petitioner from custody without restraints on his liberty. When children and young people are detained, and separated from their families, communities and schools, empirical research shows that such detention is deeply traumatizing and has long-term negative impacts on brain development and on that child's trajectory through life including on their mental health, educational attainment, and long-term well-being. Youth Detention Expert Amici respectfully submit that Eduardo Jose Fuenmayor Ochoa's ("Eduardo") habeas petition should be granted, and Eduardo should be

2

released to live at liberty, so his mental health, educational progress, and family connections are not further damaged by the imposition of punitively restrictive, unnecessary detention.

## BACKGROUND

Eduardo is an 18-year-old young man who has lives in the United States since approximately July 2023, when he arrived here from Venezuela fleeing unsafe conditions. Pet. ¶ 5. Eduardo is currently detained by Immigration and Custom Enforcement ("ICE") in the Orange County Jail in Goshen, New York. He has been held at the Orange County Jail since April 5, 2026, the day after he turned 18 years old. Pet. ¶ 47. This is an adult facility which houses adult detainees charged with crimes as well as ICE detainees. Pet. ¶ 3.

Before he turned 18 earlier this month, Eduardo was in the custody of the Office of Refugee Resettlement ("ORR"). Pet. ¶ 7. Beginning on August 8, 2025, Eduardo was held in a Children's Village facility in Dobbs Ferry, New York, where the federal government as well as the New York State Justice Center has found child welfare concerns to exist and is reportedly investigating a culture of abuse at the facility, including staff physical abuse, sexual abuse, verbal abuse, the improper use of restraints and isolation of youth with behavioral issues and trauma histories.[1] Due to the reported child abuse, Eduardo was removed from the facility and transferred to Abbott House, a different ORR facility. Pet. ¶¶ 7, 9. Eduardo has been detained for almost nine months at the time of this filing.

## DETENTION HARMS CHILDREN'S AND YOUTH'S MENTAL AND PHYSICAL HEALTH

A substantial body of evidence exists demonstrating that children and youth who are detained in facilities—such as the Orange County Jail where Eduardo is being held—experience

---

[1] Susanti Sarkar, *Abuse Allegations Prompt Removal of Migrant Children from New York Facility,* THE IMPRINT: YOUTH AND FAMILY NEWS (Apr. 21, 2026)**,** https://imprintnews.org/child-welfare-2/childrens-village-migrant-youth-abuse-allegations/273990.

measurable, lasting negative effects on their mental and physical health. Pediatricians and other health experts agree that "[i]mmigrant children seeking safe haven in the United States should never be placed in [ICE] detention facilities" because "[t]here is no evidence that any amount of time in detention is safe for children and detention itself poses a threat to child health."[2] As the American Academy of Pediatrics and other national medical organizations have concluded, "even short periods of detention can cause psychological trauma and long-term mental health risks" for children.[3]

Research has shown that: (1) detention causes lasting harm to young people's mental and physical health; (2) detention is highly damaging to the development of adolescents and emerging adults like Eduardo; (3) solitary confinement is dangerous for youth and contributes to suicide risk; (4) detention of youth often triggers future criminalization; (5) longer periods of detention are particularly harmful to youth; and (6) detention interrupts and interferes with youth's educational progress.

### A. DETENTION CAUSES LASTING MENTAL HEALTH HARMS TO CHILDREN AND YOUTH

Children and youth such as Eduardo experience emotional and psychological injuries when they are detained, including developmental delays, post-traumatic stress disorder, anxiety, depression, and suicidal ideation.[4] As explained by Stanford University child clinical psychologist Dr. Ryan Matlow, the Director of Community Programs for Stanford Early Life Stress and Resilience Program and Co-Director of Stanford's Immigrant Child Health Program:

> Drawing both from empirical research and from the reports of detained children, we know that children's experiences in

---

[2] Letter from medical and mental health clinicians and providers for children and families to President Trump and Kristi Noem, U.S. Dep't of Homeland Sec'y (Mar. 25, 2025) https://www.acponline.org/sites/default/files/acp-policy-library/letters/joint_letter_to_administration_opposing_family_detention_2025.pdf.
[3] *Id.*
[4] *See* Julie M. Linton et al., *Detention of Immigrant Children*, PEDIATRICS JOURNAL OF THE AM. ACAD. OF PEDIATRICS (May 1, 2017), https://doi.org/10.1542/peds.2017-0483.

immigration custody are associated with increases in psychological distress and functional impairment. As a field, we have observed increases in depression, anxiety, traumatic stress symptoms, and behavioral difficulties – sometimes leading to thoughts, urges, and acts of self-harm and suicidality – associated with children's experiences of immigration detention.[5]

With respect to the health impacts of detention, Dr. Matlow notes that "[c]hildren in ORR custody are inherently navigating a challenging, disruptive, and distressing transitional experience," which "becomes 'traumatic' when the individual has a limited sense of agency or control over their circumstances, limited knowledge about what is happening to them or what to expect, limited access to support and coping resources, and a lack of resolution to the threat or fear."[6] Unfortunately, ORR custody is "characterized by these exact factors" because children and youth in ORR facilities "are restricted in their autonomy and agency, they have little knowledge or control over requirements or processes for release, they feel helpless in their circumstance, they experience chronic worry about their well-being (or that of their loved ones), and they experience various barriers to engaging with the coping and support resources that have traditionally helped them."[7] These experiences, Dr. Matlow concludes, "create the conditions for trauma and a lasting posttraumatic stress response."[8]

Children and youth in detention also have poor health outcomes that carry on into adulthood. For example, a study published in the journal *Pediatrics* recognized that "[f]or the 1.3 million children and adolescents arrested in the United States each year, incarceration may

---

[5] Ryan Matlow et al., *The Unraveling of ORR: A Quick and Calculated Undoing of a System Intended to Protect Children*, NATIONAL CENTER FOR YOUTH LAW 16 (Sept. 29, 2025), https://youthlaw.org/sites/default/files/attachments/2025-09/NCYL_The%20Unraveling%20of%20ORR_Sept2025_FINAL.pdf.

[6] *Id.* at 17.

[7] *Id.*

[8] *Id.*

systematically degrade their healthy development."[9] The study empirically demonstrated that youth incarceration of even less than one month "predicted subsequent adult depressive symptoms" in adulthood, while youth incarceration for a year or longer "predicted subsequent adult suicidal thoughts."[10] Dr. Matlow's research at Stanford reached similar conclusions with respect to children who are held in immigration detention. As Dr. Matlow explains, "[r]esearch has shown that symptoms of depression, anxiety, and PTSD endure well after release from immigration detention, and, for many, the detention experience becomes a source of traumatic stress, resulting in symptoms of avoidance . . . , intrusive thoughts and memories, and/or hypervigilance."[11]

A recent report issued in December 2025 further highlights some of the negative, public health and individual consequences (physical and mental health impacts) of youth incarceration.[12] Detention "exacerbates the serious health problems experienced by many youth who enter correctional facilities. Research finds that at least two-thirds of [youth in custody] ha[d] one or more physical health care needs . . . and suffer from long-term mental health problems."[13] The evidence is clear that detention during adolescence does lasting damage to young people's health and well-being.[14]

In addition to the adverse mental health conditions that young people develop because of incarceration, many have already experienced Adverse Childhood Experiences ("ACEs") prior to

---

[9] Elizabeth S. Barnert et al., *How Does Incarcerating Young People Affect their Adult Health Outcomes?*, PEDIATRICS JOURNAL OF THE AM. ACAD. OF PEDIATRICS (Feb. 1, 2017), https://pmc.ncbi.nlm.nih.gov/articles/PMC5260153/.
[10] *Id.*
[11] Matlow, *supra* note 5 at 19.
[12] *See* Reggie Chatman & Hannah Ellen, *The Public Health Impacts of Youth Incarceration* (December 2025), https://fortunesociety.org/wp-content/uploads/2025/12/The-Public-Health-Impacts-of-Youth-Incarceration-v3.pdf.
[13] *See Why Youth Incarceration Fails: An Updated Review of the Evidence*, The Sentencing Project (2022), https://www.sentencingproject.org/app/uploads/2023/03/Why-Youth-Incarceration-Fails.pdf.
[14] *See id.*

incarceration. ACEs are traumatic or stressful events that occur during childhood (defined as before age 18) and are typically classified into three broad categories: abuse, neglect, and household challenges. A substantial body of research has found that ACEs are associated with higher risks of depression, post-traumatic stress disorder, and suicidal ideation in adulthood. "Many of the stressful circumstances that emerging adults may have encountered as children, such as violence, neglect, and unstable living environments are present within jail and prison. Exposure to similar or identical stressors during incarceration is linked to long-term adverse mental health outcomes, such as PTSD, depression, anxiety, and suicide.  In these instances, incarceration acts as a retraumatizing experience, which intensifies these symptoms and causes further mental health deterioration."[15] Eduardo's prior history of trauma and abuse as described in the Petition indicates that he has already experienced several ACEs and that his incarceration at the Orange County Jail therefore poses particularly serious risks to his mental health given his background.

### B. ADOLESCENTS LIKE EDUARDO ARE HIGHLY VULNERABLE TO HARMS FROM DETENTION BECAUSE THEY ARE AT A CRITICAL STAGE OF BRAIN DEVELOPMENT

An extensive body of research on brain development during adolescence and emerging adulthood, a critical developmental period neurologically defined as beginning at the start of puberty and extending through a person's mid-20s, establishes that young people undergo significant cognitive and social changes as they mature during this stage of life, and, as a result, are vulnerable to the negative effects of detention.[16] "Young people are malleable during [emerging adulthood] and undergo significant cognitive and social changes as they mature. To experience

---

[15] *See* Reggie Chatman & Hannah Ellen, *The Public Health Impacts of Youth Incarceration* (December 2025), https://fortunesociety.org/wp-content/uploads/2025/12/The-Public-Health-Impacts-of-Youth-Incarceration-v3.pdf.
[16] *See What is Emerging Adult Justice?,* ANNIE E. CASEY FOUND. (Feb. 21, 2025), https://www.aecf.org/blog/what-is-emerging-adult-justice.

healthy, normative development, emerging adults need opportunities to explore and learn, with consistent, caring adults to support them."[17]

Being placed in detention during this critical developmental period poses many risks to youth. Research shows that group and institutional placements generally produce poorer outcomes for youth than family-based settings, including higher rates of delinquency, lower test scores, and lower high school graduation rates.[18] For example, a breakthrough 2021 study that focused on young people's direct experiences of group and institutional placement in foster care concluded that these institutional settings often fail to offer consistent, caring relationships and actually prevented children and youth from building the sort of relationships that are necessary for healing, returning to community, and successfully transitioning to adulthood.[19] In the same study, young people frequently described group and institutional placements as punitive, prison-like, and traumatic.[20] Youth living in such settings often miss out on normal, age appropriate activities that are crucial to their social development and sense of normalcy.[21]

### C. SOLITARY CONFINEMENT IS DANGEROUS FOR YOUTH AND INCREASES RISKS FOR SERIOUS MENTAL ILLNESS AND SUICIDE

Since his arrival at the Orange County Jail on April 4, 2026, Eduardo has been isolated alone in a cell. Pet. ¶¶ 11, 47. He has been "locked down" in his cell 24 hours per day, 7 days a week, except for 10-15 minutes per day when he leaves his cell to call his family. *See id.*

---

[17] *Id.*
[18] *How can we end the need for group placements in child welfare?,* CASEY FAMILY PROGRAMS (Oct. 18, 2023), https://www.casey.org/ending-group-placements-principles/ (collecting peer-reviewed studies).
[19] *See* Sarah Fathallah & Sarah Sullivan, *Away From Home – Youth Experiences of Institutional Placements in Foster Care*, THINK OF US (July 21, 2021), https://assets.website-files.com/60a6942819ce8053cefd0947/60f6b1eba474362514093f96_Away%20From%20Home%20-%20Report.pdf.
[20] *See id.* at 69.
[21] *See id.* 56-59.

Eduardo's conditions constitute solitary confinement, defined as the isolation of an incarcerated individual for up to 24 hours a day with little to no meaningful human contact.[22] Adult jails and prisons may use solitary confinement in a misplaced effort to "protect" more vulnerable members of the population, such as 18-year olds, but these conditions exact a profound harm on youth.

Solitary confinement causes serious physical, neurological, and psychological harm to adults, and has even more dire effects on children, whose minds and bodies are still growing and developing.[23] The United Nations classifies prolonged solitary confinement (defined as solitary confinement for a time period in excess of 15 consecutive days) as cruel and inhumane treatment that often rises to the level of torture and its Rules prohibit it.[24] Applying the Nelson Mandela Rules, Eduardo's 20 days of solitary confinement constitute "prolonged solitary confinement." Despite this fact, Eduardo remains in solitary confinement, where has been since he arrived at the Orange County Jail on April 5, 2026.

Experiencing isolation for days at a time as Eduardo has inevitably causes adverse mental health effects. Neuroscientific research on solitary confinement documents its damaging impact on mental and physical health, socioemotional learning, and overall quality of life.[25] The acute and chronic repercussions of isolation include prominent behavioral and social deficits and a propensity for mood disorders and psychosis; these effects have been observed across developmental periods.[26]

---

[22] Ella Whitaker et al., *Children in Solitary Confinement*, SOLITARY WATCH (2024), https://solitarywatch.org/wp-content/uploads/2024/06/SW-Fact-Sheet-7-Children-in-Solitary-v20240621.pdf.
[23] *See id.* at 1.
[24] United Nations, UN Standard Minimum Rules for Treatment of Prisoners (the Nelson Mandela Rules), Rules 43-45, https://www.unodc.org/documents/justice-and-prison-reform/Nelson_Mandela_Rules-E-ebook.pdf.
[25] Natalia Orendain et al., *Juvenile confinement exacerbates adversity burden: A neurobiological impetus for decarceration*, FRONTIERS IN NEUROSCIENCE (Sept. 30, 2022), https://pmc.ncbi.nlm.nih.gov/articles/PMC9561343/pdf/fnins-16-1004335.pdf.
[26] *See id.*

Children are especially vulnerable to these psychological effects because their brains and bodies are not fully developed.[27] The frontal lobe region of the brain, which controls cognitive processing, impulse control, and understanding of consequences, develops during adolescence and early adulthood.[28] Frontal lobes are constrained from developing healthily when they are held in isolation, which affects their overall cognitive growth.[29]

Experts on suicide prevention in jails and prisons report a direct correlation between suicide and solitary confinement. Incarcerated children are already more susceptible to suicide than incarcerated adults, which is exacerbated by placement in solitary confinement. The Child Crime Prevention & Safety Center reports that half of all suicides in juvenile facilities happen while kids are in solitary.[30] Additionally, rates of self-harm are much higher in solitary confinement than in the general prison population.[31]

In addition to experiencing adverse psychological effects, children placed in isolation are also denied access to age-appropriate education, which is vital to their development and proven to decrease the likelihood of criminal activities.[32] This appears to be true in Eduardo's case, where he reports no access to any educational programming since he arrived at the Orange County Jail.

---

[27] *No Child Left Alone: Campaign to Stop the Solitary Confinement of Youth in Adult Jails and Prisons*, AMERICAN CIVIL LIBERTIES UNION (2013), https://www.aclu.org/sites/default/files/field_document/toolkit_juvenile_solitary_briefing_paper_final.pdf.

[28] Child Crime Prevention & Safety Center, "Minors in Custody—Solitary Confinement," n.d. accessed Oct. 26, 2023, https://childsafety.losangelescriminallawyer.pro/minors-in-custody-solitary-confinement.html.

[29] Gary Wenk, *How Social Isolation Affects the Brain*, PSYCHOLOGY TODAY (Jan. 7, 2023), https://www.psychologytoday.com/us/blog/your-brain-on-food/202301/how-social-isolation-affects-the-brain?msockid=0624a96d46dd6946027bbfe347646892.

[30] Ian Kysel, *Growing up Locked Down: Youth in Solitary Confinement in Jails and Prisons Across the United States*, AMERICAN CIVIL LIBERTIES UNION AND HUMAN RIGHTS WATCH (2012), https://www.aclu.org/files/assets/us1012webwcover.pdf.

[31] Fatos Kaba et al., "Solitary Confinement and Risk of Self-Harm Among Jail Inmates," AMERICAN JOURNAL OF PUBLIC HEALTH 104:3 (March 2014), https://www. ncbi.nlm.nih.gov/pmc/articles/PMC3953781/.

[32] Mahari Simmonds, *Education Behind Bars: Can Young People Be Taught in Adult Justice System?*, JUVENILE JUSTICE INFORMATION EXCHANGE (Jan. 2, 2019), https://jlc.org/news/education-behind-bars-can-young-people-be-taught-adult-justice-system.

### D.  PROLONGED DETENTION IS PARTICULARLY HARMFUL TO CHILDREN AND YOUTH

No amount of time in detention is safe for children and youth, but the longer the government detains a child, the more profound the harm.[33] As children remain in custody for longer and longer, their mental and physical health deteriorates. The United States Department of Health and Human Services Office of Inspector General has reported that "some children [in ORR custody] who did not initially exhibit mental health or behavioral issues began reacting negatively as their stays grew longer . . . longer stays resulted in higher levels of defiance, hopelessness, and frustration among children, along with more instances of self-harm and suicidal ideation."[34] Mental health clinicians "described that a child's mental health often deteriorates as the length of their stay in ORR custody increases."[35]

Several longitudinal studies reveal that a higher "dose" of incarceration is associated with poor long-term psychiatric and psychosocial outcomes. Researchers define dose of incarceration as both depth (type of facility: juvenile, adult jail, or prison) and duration of incarceration. Higher cumulative exposure to incarceration, especially in more severe prison settings, is associated with lower rates of achieving positive mental health and interpersonal function.[36]

If his habeas petition is not granted, Eduardo's detention will likely be lengthy, causing further harm.

---

[33] *See* Barnert, *supra* note 10.

[34] *Care Provider Facilities Described Challenges Addressing Mental Health Needs of Children in HHS Custody*, U.S. DEP'T OF HEALTH AND HUM. SERVS., OFF. OF THE INSPECTOR GEN., OEI-09-18-00431, 12 (Sept. 4, 2019), https://oig.hhs.gov/documents/evaluation/3153/OEI-09-18-00431-Complete%20Report.pdf.

[35] *Id.* at 20.

[36] Sara E. Thomas et al., *Incarceration and Subsequent Psychosocial Outcomes: A 16-Year Longitudinal Study of Youth After Detention*, JOURNAL OF THE AMERICAN ACADEMY OF CHILD & ADOLESCENT PSYCHIATRY, ahead of print, (Apr. 10, 2025), https://www.jaacap.org/article/S0890-8567(25)00184-4/fulltext; Daniel C. Semenza et al., *Youth Incarceration in Adult Facilities and Mental Health in Early Adulthood*, JOURNAL OF ADOLESCENT HEALTH 74, no. 5, 989-95 (2024), https://doi.org/10.1016/j.jadohealth.2024.01.008; Elizabeth S. Barnert et al., *What Is the Relationship Between Incarceration of Children and Adult Health Outcomes?*, ACADEMIC PEDIATRICS 19, no. 3, 342-50 (2019), https://doi.org/10.1016/j.acap.2018.06.005.

11

### E. DETENTION OF YOUTH TRIGGERS A CYCLE OF INCREASED CRIMINALIZATION

Studies have long shown that once youth enter custodial detention settings they are more likely to recidivate than both youth who are *not* detained at all, and youth who are supervised in community-based settings.[37] The mere act of incarcerating youth may directly and indirectly provide an impetus for increased criminalization by aggravating key factors that cause recidivism. Data pulled from State sources across the U.S. demonstrate that youth who are released from correctional confinement suffer high rates of re-arrest, new adjudications and/or convictions, and re-incarceration. One study in particular reviewed data across nearly all states from 2011 and found that 70% to 80% of youth, who left detention facilities, were rearrested within two or three years of release.[38] Of those young people for whom the study accounted "45% to 72% of [them] were adjudicated [in juvenile court]… or convicted [in adult court] for new offenses within three years of release."[39] The research shows that across the country, youth incarceration significantly increases a young person's chances of recidivism.[40]

At the center of this cycle of youth recidivism and criminalization is unwarranted youth detention. Youth like Eduardo greatly benefit from either expeditious release or no detention at all. Subjecting Eduardo to continued detention will perpetuate not only a rapid decrease in his

---

[37] *See* Randall G. Sheldon., *Detention Diversion Advocacy: An Evaluation*, JUVENILE JUSTICE BULLETIN WASHINGTON, DC: DEPARTMENT OF JUSTICE, OFFICE OF JUVENILE JUSTICE AND DELINQUENCY PREVENTION (1999).

[38] *See* Richard A. Mendel, *No Place for Kids: The Case for Reducing Juvenile Incarceration*, ANNIE E. CASEY FOUNDATION (2011).

[39] *Id.*

[40] A review of data over the past few decades measuring recidivism outcomes for youth formerly detained for varying periods of time in detention facilities shows increased rates of arrests, convictions, and incarceration in adulthood. *See* Richard A. Mendel, *Why Youth Incarceration Fails: An Updated Review of the Evidence*, THE SENTENCING PROJECT (2023). A 2015 study found that young people incarcerated during adolescence were nearly four times more likely to be incarcerated in adulthood than comparable peers who were not incarcerated. *See* Amanda B. Gilman et al., *When is a youth's debt to society paid? Examining the long-term consequences of juvenile incarceration for adult functioning*, JOURNAL OF DEVELOPMENTAL AND LIFE-COURSE CRIMINOLOGY, 1(1), 33-47 (2015).

mental health and overall ability to function meaningfully in society, but it also will significantly increase his risk of future criminalization.

### F. DETENTION INTERFERES WITH AND DISRUPTS CHILDREN'S AND YOUTH'S EDUCATION

Empirical research also reveals that detention disrupts and negatively impacts children and youth's educational trajectories. Disrupted education results in missed academic opportunities and decline in performance, and it causes students to become isolated from their peers during a critical developmental phase.

Eduardo had completed some high school in Texas before he was detained. Pet. ¶ 31. Since his detention at the Orange County Jail, he has received no educational services. Under New York law, Eduardo remains eligible to enroll in a New York State high school until the age of 21, *see* N.Y. Educ. Law § 3202, yet he is receiving no opportunity to attend school at the Orange County Jail.

### CONCLUSION

Detention in facilities such as the Orange County Jail where Eduardo is currently confined has lasting, detrimental impacts on children and youth's mental and physical health, family relationships, and educational outcomes, especially during adolescence and emerging adulthood, when young people are highly vulnerable to the adverse effects of detention. The fact that Eduardo is being held in solitary confinement, and has been for the last 20 days, raises urgent concerns about his well-being. Eduardo's petition for a writ of habeas corpus should be granted, and he should be spared from further incarceration at the Orange County Jail.

Dated: April 24, 2026
     New York, New York

EMERY CELLI BRINCKERHOFF
ABADY WARD & MAAZEL LLP


/s/

Katherine Rosenfeld
One Rockefeller Plaza, 8th Floor
New York, New York 10020
(212) 763-5000
krosenfeld@ecbawm.com

*Attorneys for Amici Curiae Youth
Detention Experts*